(C. D. 1743)

HERMAN D. STEEL COMPANY *v.* UNITED STATES

198

United States Customs Court, Second Division

(Decided December 15, 1955)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Mollie Strum* and *Richard M. Kozinn*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The collector of customs classified certain articles described in the record as profile cutters, imported from Switzerland, as "Cutting tools containing over .02% tungsten" and, accordingly, imposed duty thereon at the rate of 30 per centum ad valorem in paragraph 352 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 352), as modified by the General Agreement on Tariffs and Trade (82 Treas. Dec. 305, T. D. 51802).

Plaintiff, by its original protest and as amended, makes various claims for lower rates of duty but, as stated by plaintiff at the trial, "We rely primarily on the claim for duty as parts of machine tools, which has a rate of 15 per cent ad valorem under paragraph 372, as modified."

Further, as stated by plaintiff at the trial, "Additional claims are made in the protest, and in the protest as amended, for duty at 10 per cent under paragraph 356, as modified, as blades or knives for power machines, or at 20 per cent under paragraph 372, as modified, as shears or cutters for fabricating steel shapes. We do not, however,

press the claim at 13¾ per cent under paragraph 372, as parts of machines, and we waive that last 13¾ per cent claim."

It was admitted by plaintiff at the trial that the merchandise in its imported condition contains over two-tenths of 1 per centum tungsten.

The competing provisions of the statutes relied upon are here set forth, certain portions being stressed.

Paragraph 352 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra*:

*Cutting tools of any kind containing more* than one-tenth of 1 per centum of vanadium, or more than *two-tenths of 1 per centum of tungsten,* molybdenum, or chromium_____ 30% ad val.

Paragraph 352 of the basic tariff act:

Twist and other drills, reamers, milling cutters, taps, dies, die heads, and metal-cutting tools of all descriptions, and cutting edges or parts for use in such tools, composed of steel or substitutes for steel, all the foregoing, if suitable for use in cutting metal, not specially provided for, 50 per centum ad valorem; cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium, 60 per centum ad valorem. *The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, but shall not apply to holding or operating devices.*

Paragraph 372 of the tariff act, as modified, *supra*:

Machine tools (except jig-boring machine tools)_____ 15% ad val.

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

   *         *         *         *         *         *         *

    Other_____ The same rate of duty as the articles of which they are parts

Paragraph 372, as modified, *supra*, and as alternatively invoked by plaintiff:

Punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes_____ 20% ad val.

Paragraph 356 of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (86 Treas. Dec. 121, T. D. 52739, and 86 Treas. Dec. 337, T. D. 52820):

Planing-machine knives, tannery and leather knives, tobacco knives, paper and pulp mill knives, shear blades, circular cloth cutters, circular cork cutters, circular cigarette cutters, meat-slicing cutters, and all other cutting knives and blades used in power or hand machines (not including any stock-treating parts, other than mill knives, for pulp or paper machinery)_____ 10% ad val.

The brief of plaintiff indicates that the primary question for our determination is whether the subject merchandise is excluded from paragraph 352, in which it was classified, by virtue of the qualifying phrase contained therein which reads—

\* \* \* The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, *but shall not apply to holding or operating devices*. [Italics added.]

The collector's classification carries with it the presumption that the articles in controversy were found to be cutting tools containing more than two-tenths of 1 per centum of tungsten, and our first inquiry will be whether said articles are "holding or operating devices," within the meaning of that provision in said paragraph 352.

Other claims invoking the provision for cutting knives and blades used in power or hand machines in paragraph 356, as modified, *supra*, or as shears or bar cutters, intended for use in fabricating steel shapes, in paragraph 372, as modified, *supra*, will be considered *infra*.

At the trial, but one witness, Philip N. Steel, was called. He testified, on behalf of the plaintiff company, of which he is a partner, that, since July 1, 1947, he had been engaged in the purchase, sale, traveling, and general executive duties with the company, which is engaged in the importation of watch and clock parts, machinery, parts thereof, "and most allied articles." He identified the merchandise in controversy as profile cutters, which his company had ordered from the supplier in Switzerland, and had become familiar with them through the fact that his concern supplies the original machine tool in which the profile cutters are used.

The witness produced a sample said to represent the imported merchandise, except that the latter has a higher tungsten and carbon content and a fewer number of teeth. It was received in evidence as illustrative exhibit 1. An examination of the exhibit discloses that it consists of 10 small wheels, approximately one-half inch in diameter, with a large number of teeth cut into the perimeter of each wheel. Steel testified that they could be used in the machine for which they were intended, either singly or in gangs.

Exhibit 2 was received in evidence to illustrate the shape of the teeth of the cutter. The wheels are used, according to the witness, "in an automatic pinion and wheel cutting machine" for the purpose of "Cutting the teeth in a wheel" or leaves in a pinion.

Steel described the machine in which the cutting wheels are employed as having been manufactured by Joseph Petermann of Switzerland and is known as a number 2 automatic pinion-cutting machine. As stated by the witness—

\* \* \* The blank wheels or pinions are placed in the feed as marked, and one by one they drop and are held by a holder, and then the cutter, which is held on the cutting arbor, proceeds to fashion the blank into the desired profile, whether it be a pinion leaf or a wheel tooth.

He also stated that he had sold the Petermann machine, had seen it in operation, and was familiar with its parts.

Exhibit 3 was identified by the witness as an illustration of the machine and the position of the cutters when in operation. He stated that the part marked "A" represents the "complete automatic pinion cutting machine, number 2 pinion cutting machine"; that "B" represents a portion of the machine "in which it clearly shows the position of the cutters while performing their work. The lower part of the photograph shows the blank pieces of metal which are to be fashioned, and it will be noted in this case there are two cutters on the arbor. I explained before there can be more or fewer. The bottom picture, 'C', shows one of these blanks that is partially machined or cut. The blank will turn at certain intervals as the work progresses."

Exhibit 4 was introduced to illustrate wheel blanks which have been "stamped out on a press like machine," and exhibit 5 was introduced to show the condition of the blank wheels of illustrative exhibit 4 after they have been cut by the Petermann machine with the use of cutters similar to the imported merchandise.

It appears that the machine is useless unless it be equipped with cutters. As stated by the witness—

The purpose of the machine is to either cut leaves in pinions, or teeth in wheels, so that the cutter becomes a [sic] indispensable part of the machine tool in order for it to do the work for which it was purchased.

The witness was positive in his statement that the subject cutters can be used only on "pinion or wheel cutting machines made by other manufacturers, but not in turret, lathe or other machine tools. They are specifically designed to be used in a pinion or wheel cutting machine." It also appears from the record that these cutters are made to very fine dimensional requirements. As stated by the witness—

The wheels as submitted by sample, are for a watch, and the teeth must be cut to very close tolerances. On the drawing submitted you will see that some of the tolerances go down to two-thousandths of an inch.

Referring to the drawing on illustrative exhibit 2, Steel testified—

We have some tolerances shown here going down to one-thousandth of an inch. In other cutters similar to the ones in question, the tolerance goes down even finer to the ten-thousandths of an inch. * * *

Further, illustrating the precision demanded in the imported cutters, Steel testified—

The requirements are such that the wheel in question is an escape wheel, which is activated by a gear train, the original power coming from the mainsprings. The subsequent action of the escape wheel is to permit the power to be activated so that in turn it checks the motion of the balance wheel within the time regulation specified for the watch commercially. In order to do that, the teeth have to be cut to very precise tolerances in order that the pallet be released in order to give the time keeping element usually found in a watch.

It seems not to be disputed that the Petermann number 2 automatic pinion cutter is a machine tool and that the subject cutter is an indispensable part thereof, since the witness testified that the cutter is an "indispensable part of the machine tool," in order for it to do the work for which it was purchased, namely, to cut teeth in a wheel blank or for cutting leaves in a pinion.

The parties also agree that the imported articles contain more than two-tenths of 1 per centum of tungsten, as returned by the collector of customs. However, plaintiff insists that the articles are not the cutting tools of paragraph 352, as classified by the collector, by reason of the clause in that paragraph which excepts from its provisions "holding or operating devices."

It is true that the witness Steel, when asked "What is the working or operating device on that Petermann machine?" replied, "The working or operating device is the cutter." However, that was the statement of a conclusion by the witness, which is not borne out by other evidence of record. It has been judicially stated on several occasions that a sample may be a potent witness. *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995. A visual examination of exhibit 1, representing the subject merchandise, together with the illustrative exhibits referred to above which describe how it functions, dispels the idea that the cutters are "operating devices." At most, the cutters are devices which are operated by the machine tool to perform its appropriate function. The witness Steel, admittedly not a master mechanic but essentially a salesman, merely expressed his opinion that the imported articles are "operating devices."

We are of the opinion that the testimonial record, coupled with the information to be gained from an examination of the exhibits, falls short of establishing the claim of plaintiff that the cutters in controversy are either operating devices or holding devices within the meaning of said paragraph 352.

Undoubtedly, the cutters are parts of machines, as stated by plaintiff, but, as such, they are also cutting tools "whether or not * * * imported separately or as parts of or attached to machines."

In its brief, plaintiff invites our attention to the following cases which it states relate to "types of metal cutting tools which seem to be operating devices, that were excluded from paragraph 352":

*Motch & Merryweather Machinery Co.* v. *United States*, 63 Treas. Dec. 1215, Abstract 22703.

*Heller Machine Co.* v. *United States*, 63 Treas. Dec. 1517, Abstract 24063.

*United Machine Tool Corp.* v. *United States*, 64 Treas. Dec. 98, T. D. 46547.

*Henry Pels & Co., Inc.* v. *United States*, 71 Treas. Dec. 242, T. D. 48817.

*Henry Pels & Co.* v. *United States*, 68 Treas. Dec. 44, T. D. 47790.

*H. Boker & Co. (Inc.)* v. *United States*, 60 Treas. Dec. 482, T. D. 45145.

*G. Van der Loo* v. *United States*, 63 Treas. Dec. 1417, Abstract 23625.

We fail to find anything in the above-cited cases which causes us to depart from the conclusion we have reached herein.

Cited by defendant in its brief is the case of *Technical Charts, Inc.* v. *United States*, 20 Cust. Ct. 157, C. D. 1101, which, incidentally, contains reference to some of the cases cited by plaintiff herein. In *Technical Charts*, the plaintiff therein challenged the classification by the collector of customs of certain dies within the purview of paragraph 352 of the Tariff Act of 1930, claiming they should have been properly classified as parts of printing machinery, or, alternatively, as parts of machines, not specially provided for, in paragraph 372 of said act. In affirming the decision of the collector of customs, this court stated as follows:

> Directly applicable to the case before us are the following quotations from the opinion of this court in the *Lionel Corporation* case, *supra* [71 Treas. Dec. 736, T. D. 48952]:
>
> > As we read its congressional history, the legislative purpose in framing paragraph 352 of the present law was to extend its scope far beyond the limits of its predecessor paragraph in the 1922 act. The first part of paragraph 352 names certain metal-cutting tools, and then provides for metal-cutting tools of all descriptions, imposing thereon a duty of 50 per centum ad valorem. The second half, which is completely independent of the first, fixes a rate of 60 per centum ad valorem on "cutting tools of any kind containing more than * * * two-tenths of 1 per centum of tungsten * * *." Therefore, while the first half is limited to unalloyed tools which cut metal, the second covers all cutting tools which contain the prescribed percentages of the named alloys.

and—

> > Therefore, even were it here established, which it is not, that the articles in question were parts either of punches or of machines not specially provided for, inasmuch as they are unquestionably dies they would be more specifically provided for in said paragraph 352, as classified by the collector. See *Henry Pels & Co., Inc.* v. *United States*, T. D. 48817.

Although profile cutters, as such, are not *eo nomine* provided for within the provisions of paragraph 352 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, as were the dies in the *Technical Charts* case, *supra*, they are included within the provision for "Cutting tools of any kind" containing the required percentages of vanadium, tungsten, molybdenum, or chromium. Moreover, the fact that the profile cutters, which eventually were to become parts of a Petermann number 2 automatic pinion-cutting machine, were imported separately does not vary this conclusion in the light of the provision in paragraph 352 of the basic tariff act, which has like application to said paragraph, as modified by the General Agreement on Tariffs and Trade, to the effect that—

* * * The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, but shall not apply to holding or operating devices.

It would appear, therefore, that plaintiff herein has failed to overcome the presumption of correctness attaching to the classification of the articles in controversy and that the claim in the protest for classification as parts of machine tools within the purview of paragraph 372, as modified, *supra*, is untenable. Alternative claims for classification as shears or bar cutters for use in fabricating rolled iron or steel shapes within the purview of paragraph 372, as modified, *supra*, or as cutting knives and blades used in power or hand machines in paragraph 356 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, are wholly unsupported by the record before us.

Upon the record herein, we hold that the presumption of correctness which attaches to the classification of the collector of customs has not been overcome. Therefore, all claims in the protest are overruled and judgment will issue accordingly.