(C.D. 2616)

Upton, Bradeen & James, Inc. *v.* United States

---

United States Customs Court, Second Division

(Decided February 7, 1966)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before RAO, FORD, and NICHOLS, Judges

NICHOLS, Judge: The merchandise involved in these cases, consolidated at the trial, consists of knives or blades for machines known as punches, shears, or bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes, imported from West

Germany at various dates in the years 1957 through 1961. They were assessed with duty at 30 per centum ad valorem under paragraph 352 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, as cutting tools of any kind containing the prescribed percentage of alloys. It is claimed that they are properly dutiable at 17 per centum or 18 per centum ad valorem under paragraph 372 of said tariff act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, as parts of punches, shears, or bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes.

The pertinent provisions of the tariff act are as follows:

PAR. 352. Twist and other drills, reamers, milling cutters, taps, dies, die heads, and metal-cutting tools of all descriptions, and cutting edges or parts for use in such tools, composed of steel or substitutes for steel, all the foregoing, if suitable for use in cutting metal, not specially provided for, 50 per centum ad valorem; cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium, 60 per centum ad valorem. The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, but shall not apply to holding or operating devices.

Paragraph 352, as modified by T.D. 51802:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 352 | Cutting tools of any kind containing more than one-tenth of 1 per centum of vanadium, or more than two-tenths of 1 per centum of tungsten, molybdenum, or chromium_____ | 30% ad val. |

Paragraph 372, as modified by T.D. 54108:

| Tariff Act of 1930, para-graph | Description of Products | Rates of Duty | | |
| --- | --- | --- | --- | --- |
| | | A | B | C |
| 372 | Punches, shears, and bar cutters intended for use in fabricating structural or other rolled iron or steel shapes. | * * * | 18% ad val. | 17% ad val. |
| * | * * * | * | * | * |
| 372 | Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any articles provided for in any item 372 in this part. | * * * | The rate for the article which they are parts. | The rate for the article of which they are parts. |

It was stipulated at the trial that the articles were composed wholly or in chief value of metal, and contained over 0.2 percent of chromium, molybdenum, or tungsten, or over 0.1 percent of vanadium.

Harold B. Porter, manager of Upton, Bradeen & James, Inc., of Detroit, the plaintiff herein, testified that he was also manager of Upton, Bradeen & James, Ltd., of Windsor, Ontario (owner of the Detroit company). He has been with the Canadian firm since 1946 and, in the course of his employment, has demonstrated the Peddinghaus machines sold by his company in the United States and has sold and serviced them in Canada. He identified two triangular blades as two of the blades involved in this case, and these were received in evidence as plaintiff's exhibits 1 and 2. He stated that, except for size and shape, these exhibits are fairly representative of all the items involved here, except the articles described as "Frame 11–N for machine 210/13" in entry No. 36310 in protest 62/9569. He explained:

* * * They vary in shape from that. There are other rectangular shapes and they are fitted into frames and into recesses in the machine,

and are used for shearing, notching, cutting of rolled structural shapes, rolled bar stock, rolled flat plate. That is the general coverage of the use of the machine, and the blades themselves are an integral part of it. The machine is of no value without the blades. It can't do anything without the blades. Neither can the blades be used for anything outside the machine. They are designed for it.

The witness had never known of any of the machines being used without such blades and said that the machines, themselves, are designed to fit this type of thing and that the blades are designed to fit into the machines, will not fit anything else, and have no other use.

Mr. Porter testified that model 210, a combined punching and shearing machine, is one of the machines involved in this case, and that a brochure (plaintiff's illustrative exhibit 3) illustrates various sizes of model 210 as well as various knives, blades, and other attachments for the machines. Other brochures were also received in evidence: Illustrative exhibit 4, illustrating model 205 and various attachments; illustrative exhibit 5, illustrating a machine called the Peddy-Shear and its attachments; and illustrative exhibit 6, illustrating and describing the blades involved in this case, among others. Exhibits 1 and 2 are depicted on page 5 of exhibit 6 as knives 1–N and 2–N, respectively

According to the witness, these machines and blades are used in factories to cut and fabricate rolled steels and by almost anyone who has a need to cut, shear, and punch angle iron, T-iron, channel I-beams, and material of that kind. The blades are mounted in a frame, and the frame of the machine and the shape of the blades approximate the conformation of the material to be cut. The operations of the punch, the shear, and the bar cutters are identical.

Frame 11–N is a piece of rectangular steel that has been shaped to fit in the machine to hold the knives. It is an integral part of the machine, but does no cutting. (This item is described on the invoice as "For Universal Steel Worker *Model 210/13, latest design*, stationary knife plate 11 N." An item, 11–N, denominated a stationary blade holder, is illustrated on page 5 of exhibit 6.)

On cross-examination, the witness testified that about 15 knives of various shapes are involved here and that they perform roughly the same function. They are all cutting tools made of hardened metal containing the stipulated amounts of alloys.

Gerald Hilston testified that he is the New York representative for Upton, Bradeen & James, Inc., and that his duties are to promote the sale of Peddinghaus punching and shearing machines in the greater New York Metropolitan area and a part of New Jersey. Based on his experience in observing these machines in use, he said that his testimony as to their use would be substantially the same as Mr. Porter's.

He had never seen these machines or blades used in any other way and had never seen the blades or cutting parts used except with the machines. They can only be used with this particular machine, and the machine would not function without them. He was familiar with all of the 15 knives involved here and said they were cutting tools used in conjunction with this particular machine.

Except for the item known as frame or stationary knife plate 11–N, it is evident that the imported items are cutting tools composed of the material prescribed in paragraph 352 and that they are used in and are parts of machines which shear, notch, or cut rolled structural shapes, rolled bar stock, and rolled flat plate. The machines are known as shears or shearing and punching machines. Thus, the imports are described in both paragraph 352, as cutting tools of any kind containing the prescribed alloys, and in paragraph 372, as parts of punches, shears, and bar cutters for use in fabricating structural or other rolled iron or steel shapes. We must determine under which paragraph the imported merchandise is properly classifiable, which depends on the intent of Congress. It is pertinent to examine the legislative history of the provisions and the cases construing them.

The Tariff Act of 1922 contained the following provisions:

PAR. 398. Twist drills, reamers, milling cutters, taps, dies, and metal-cutting tools of all descriptions, not specially provided for, containing more than six-tenths of 1 per centum of tungsten or molybdenum, 60 per centum ad valorem.

PAR. 399. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, * * *, 40 per centum ad valorem.

PAR. 372. * * * machine tools and parts of machine tools, 30 per centum ad valorem, * * * all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem: * * *.

Under these provisions, it was held that twist drills employed in power-driven machines and hand drills used for drilling holes in wood, metal, or other material, were dutiable under paragraph 372, as parts of machine tools, or machines or parts, respectively. *G. W. Sheldon & Co.* v. *United States*, 45 Treas. Dec. 960, Abstract 47248; *Spiegel Bros.* v. *United States*, 51 Treas. Dec. 1169, Abstract 2565; *Ixion Tool Mfg. Co.* v. *United States*, 52 Treas. Dec. 604, Abstract 3978. *Contra,* where the drills were not proved to be parts of machines. *Benj. H. Freedman* v. *United States*, 50 Treas. Dec. 670, Abstract 656. Cutter tools made of high-speed steel containing the prescribed alloys were held dutiable under paragraph 398, rather than under paragraph 372, as parts of machine tools, or under paragraph 356, as knives or blades

used in power or hand machines. *Charles A. Redden* v. *United States*, 52 Treas. Dec. 639, Abstract 4137.

The above cases, except the one first cited, were called to the attention of Congress by the Summary of Tariff Information, 1929, pages 844–845, 907, when legislation which became the Tariff Act of 1930 was being prepared. When hearings were held on the proposed legislation, a brief was presented to the House Ways and Means Committee on behalf of the small-tool industry. Tariff Readjustment, 1929, Hearings before the Committee on Ways and Means, House of Representatives, Seventieth Congress, second session, volume III, schedule 3, pages 2572–2574. Reference was made to decisions under which commodities which the manufacturing world believed to be protected by higher rates of duty were held to be parts of machines at a lower rate. It was proposed that a new paragraph 398 be enacted containing the following proviso:

\* \* \* That if any article or articles provided for in this paragraph are also provided for in any other paragraph of this act, nevertheless such article or articles shall be classified for duty according to the provisions of this paragraph.

The bill as reported by the Ways and Means Committee contained no proviso in paragraph 398. Tariff Readjustment, 1929, Report to Accompany H.R. 2667. The House added the following to the paragraph:

\* \* \* The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines. [Comparative Print of Bill as Passed by House, Bill as Reported to Senate, and Tariff Act of 1922, p. 101.]

When the bill came to the Senate, a similar brief on behalf of the small-tool industry was filed. Tariff Act of 1929, Hearings before the Committee on Finance, United States Senate, Seventy-first Congress, first session, on H.R. 2667, volume III, schedule 3, pages 485–488. The proviso was continued (Comparative Print, p. 101) and the words "but shall not apply to holding or operating devices" were added subsequently. Supplement to Tariff Information on Items in Tariff Bill of 1930 (H.R. 2667) subject to conference, page 198.

Paragraph 352 came before the courts in a number of cases thereafter. *United Machine Tool Corp.* v. *United States*, 64 Treas. Dec. 98, T.D. 46547; *Underwood-Elliott Fisher Co.* v. *United States*, 64 Treas. Dec. 347, T.D. 46666; *Henry Pels & Co.* v. *United States*, 68 Treas. Dec. 44, T.D. 47790; *Henry Pels & Co., Inc.* v. *United States*, 71 Treas. Dec. 242, T.D. 48817; *Lionel Corporation et al.* v. *United States*, 71 Treas. Dec. 736, T.D. 48952; *Technical Charts, Inc.* v. *United States*, 20 Cust. Ct. 157, C.D. 1101. It is not necessary to discuss these cases in detail.

The holdings reflect a view prevalent for a time that when cutting tools provided for in paragraph 352 are also parts of machines under paragraph 372, but are enumerated in paragraph 352, *eo nomine*, as drills, reamers, taps, dies, etc., are enumerated, paragraph 352 is applicable, but, otherwise, paragraph 372 is applicable, at least as far as parts of machine tools or parts of punches are concerned.

A different result, and one more readily reconciled with the statute, was reached in a more recent decision, *Herman D. Steel Company v. United States*, 35 Cust. Ct. 197, C.D. 1743. That case involved so-called profile cutters, consisting of a quantity of small wheels, having teeth, used in an automatic pinion- and wheel-cutting machine, known as the Petermann machine, to cut the teeth in a wheel or leaves in a pinion. The collector classified them as cutting tools containing more than two-tenths of 1 per centum of tungsten under paragraph 352. It was held that these articles were not excluded from paragraph 352 by reason of being operating or holding devices, and that they were not classifiable under paragraph 372 as parts of machine tools, the court stating (pp. 203–204):

Although profile cutters, as such, are not *eo nomine* provided for within the provisions of paragraph 352 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, as were the dies in the *Technical Charts* case, *supra*, they are included within the provision for "Cutting tools of any kind" containing the required percentages of vanadium, tungsten, molybdenum, or chromium. Moreover, the fact that the profile cutters, which eventually were to become parts of a Petermann number 2 automatic pinion-cutting machine, were imported separately does not vary this conclusion in the light of the provision in paragraph 352 of the basic tariff act, which has like application to said paragraph, as modified by the General Agreement on Tariffs and Trade, to the effect that—

* * * The foregoing rates shall apply whether or not the articles are imported separately or as parts of or attached to machines, but shall not apply to holding or operating devices.

Judge Lawrence's attention was directed to the cases referred to above, and though he did not say so expressly, it would appear he intended to overrule them so far as inconsistent with the conclusions he then came to.

Plaintiff leans heavily on *Henry Pels & Co. v. United States*, 27 CCPA 1, C.A.D. 51, which, however, involved paragraph 356 rather than paragraph 352 of the Tariff Act of 1930. The merchandise consisted of knives or blades which were parts of shears, intended for fabricating structural or other rolled iron or steel shapes. They were classified by the collector under paragraph 372 as parts of such shears. Paragraph 356 provides for shear blades and all other cutting knives

and blades used in power or hand machines, but contains no invasive language, such as is found in paragraph 352. Plaintiff claimed:

* * * that the language of paragraph 356, *supra*, "shear blades * * * and all other cutting knives and blades used in power or hand machines" is more specific in relation to the articles than the language of paragraph 372, *supra*; that it is immaterial whether they be considered as "parts," because the language of paragraph 372, *supra*, relating to "parts" applies only to parts "not specially provided for," and that these articles are specially provided for *eo nomine* in paragraph 356, *supra*, which contains no "not specially provided for" provision.

The court stated (p. 3):

It may be conceded that the language of paragraph 356, *supra*, which has been quoted, is broad enough to include the articles, since they are shear blades, some used in power and some in hand machines, but we are unable to agree with the appellant's reasoning that the language applies more specifically to them than that of paragraph 372, *supra*. Appellant's contention fails to take into account the fact that the articles are designed and intended for a particular use which is the very use defined in the paragraph 372, *supra*.

After distinguishing cases under earlier tariff acts, *United States* v. *Edw. Jefferson, Inc.*, 19 CCPA 159, T.D. 45275, and *Norma Co. of America* v. *United States*, 6 Ct. Cust. Appls. 89, T.D. 35338, the court continued (p. 4):

* * * Here we have, in paragraph 372, *supra*, an express provision which definitely defines the articles by the use for which intended.

It has been frequently held that where the doctrine of chief use is made the test of classification, it will prevail over an *eo nomine* provision, the effort being always to arrive at the legislative intent. *Factor* v. *United States*, 15 Ct. Cust. Appls. 401, T.D. 42570.

Although *United Machine Tool Corp.* v. *United States, supra*, considered paragraph 352 as a designation based on composition, it has since been more authoritatively held to be a use provision. *General Chain & Belt Company* v. *United States*, 46 CCPA 66, 70, C.A.D. 698; *United States (Lansen-Naeve Corp. a/c Albert Klingelhofer, Party-in-Interest)* v. *Simon Saw & Steel Company*, 51 CCPA 33, C.A.D. 834. The case first cited involved so-called "mortise chains," which had cutting edges and were held to be cutting tools. They were classified by the collector under paragraph 352 and were claimed to be dutiable under paragraph 329 as chain and chains of all kinds, or under paragraph 353, as an article having as an essential feature an electrical element or device. The court sustained the collector's classification, stating (pp. 69–70):

Paragraph 329 is more specific in that it gives particular ranges of size, but paragraph 352 appears to be more specific as to the material of

which the articles are made, since it calls for specified amounts of vanadium, tungsten, molybdenum or chromium and in effect is thus limited to particular alloys of iron or steel, whereas paragraph 329 recites iron or steel broadly. It appears therefore that the competing provisions are fairly well balanced as to scope, and under such circumstances paragraph 352, which is a use provision, must prevail over the structural provision of paragraph 329, *Drakenfeld & Co.* v. *United States*, 9 Ct. Cust. Appls. 124, T.D. 37979; *United States* v. *A. W. Faber, Inc.*, 16 Ct. Cust. Appls. 467, T.D. 43211; *United States* v. *Lansen-Naeve Corp.*, 44 CCPA 31, C.A.D. 632, and cases there cited.

For similar reasons, paragraph 352 must take precedence over paragraph 353, which is not a use paragraph and which is, moreover, couched in extremely broad language to include a wide variety of articles which include electrical elements as essential features.

In *United States (Lansen-Naeve Corp. a/c Albert Klingelhofer, Party-in-Interest)* v. *Simon Saw & Steel Company, supra,* the question was whether segmental circular saws were classifiable under paragraph 340 as circular saws or under paragraph 352 as cutting tools. This court held they were dutiable as cutting tools under the rule of interpretation that a use provision prevails over an *eo nomine* or descriptive provision. The court of appeals reversed on the ground that the so-called doctrine is subject to exceptions when it comes into conflict with a clearly expressed legislative intent or a competing provision which is obviously more specific. It pointed out that only one article was capable of qualifying as a circular saw, whereas many different articles are covered by paragraph 352; that although all circular saws may be cutting tools, all cutting tools are not circular saws. It held that the *eo nomine* provisions of paragraph 340 were clear and unambiguous and that such a specific designation should prevail over the more general and far less specific designation of the class of cutting tools in paragraph 352.

*United States* v. *Lansen-Naeve Corp.,* 44 CCPA 31, C.A.D. 632, involved cylindrical steel rolls which were parts of a rolling mill which was a machine tool. It was held that they were more specifically provided for as cylindrical steel rolls under paragraph 344 than as parts, not specially provided for, of machine tools under paragraph 372. The court referred approvingly to the rule that a use provision prevails over a descriptive or *eo nomine* provision, but stated that the issue was whether a use provision qualified by a not specially provided for clause should prevail over a specific descriptive designation. It held that the not specially provided for clause excluded articles enumerated elsewhere when the competing provision was not an unlimited general description of the merchandise but provided for it specifically.

It is argued in favor of classification under paragraph 372 that the blades or knives here involved are not mentioned *eo nomine* in para-

graph 352, which, under some cases, would place them under paragraph 372. Our appellate court, in *Henry Pels & Co.* v. *United States, supra,* laid great stress on the fact that paragraph 372 defined the articles by the use for which they were intended and based its holding on the fact that the articles before it were "designed and intended for a particular use which is the very use defined in paragraph 372." Moreover, there are many kinds of cutting tools and there may be fewer articles which are parts of punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes.

But paragraph 352 and paragraph 372 have both been held to be use provisions, and, therefore, the so-called doctrine that a use provision prevails over an *eo nomine* or a descriptive designation has no application here. On the other hand, paragraph 372 has a "not specially provided for" clause as to the parts covered by it. That is an indication that not all parts of the machines included are dutiable under that paragraph. Paragraph 352 does provide specially for cutting tools containing the prescribed alloys whether or not imported as parts of machines. In *Herman D. Steel Company* v. *United States, supra,* cutting tools which were not *eo nomine* mentioned in paragraph 352 and were parts of machines were held classifiable under paragraph 352. Paragraph 356 which was involved in *Henry Pels & Co.* v. *United States, supra,* did not have the invasive proviso which is in paragraph 352.

The master rule of construction is, of course, to interpret the statute so as to carry out the intent of the Congress and legislative history may be resorted to when the language of the statute is ambiguous. *James F. White & Co., Inc.,* v. *United States,* 23 CCPA 224, T.D. 48061.

Here, it is difficult to declare the statute is ambiguous. It seems to say in the plainest possible terms that if an article is enumerated under paragraph 352 as a cutting tool having designated alloy percentages, and also under paragraph 372 as a punch, shear, or bar cutter, or other machine, or part thereof, paragraph 352 shall govern, even if the tool is physically incorporated, as imported, in a machine. Should the legislative history contradict this, we would hesitate to say we could consider it. But we confront no such conscientious difficulty here, because the legislative history both explains and supports the obvious construction. Nor does either the plain language or the legislative history support a distinction under paragraph 352 between a drill, milling cutter, tap, die, etc., specifically named, and any other cutting tool not so named. If any such distinction, with respect to the invasive proviso, was intended, it could only relate to tools not coming under the second clause, lacking the prescribed alloy percentages. The second clause, respecting tools meeting those per-

centages, does not designate any kind of such tool specifically, but deals with them all alike.

Rules as to relative specificity, designation by use versus designation by composition, etc., are only devices to ascertain the intent of the Congress, and are not for application when, as here, that intent is made plain without resort to them. *United States (Lansen-Naeve Corp. a/c Albert Klingelhofer, Party-in-Interest)* v. *Simon Saw & Steel Company, supra*, at page 40; *United States* v. *Electrolux Corporation*, 46 CCPA 143, 147, C.A.D. 718.

Under the circumstances, our decision is governed by Judge Lawrence's decision in *Herman D. Steel Company* v. *United States, supra*, which is far from being shown to be wrong, and, even in the absence of this precedent, the statutory language would require the same result.

In our view, the imported articles, which are described as knives or blades, are properly dutiable under paragraph 352, as modified, as cutting tools containing the prescribed alloys. The article described as "Frame 11–N for machine 210/13" or "stationary knife plate 11 N" (entry 36310, protest 62/9569), according to the uncontradicted testimony, is not a cutting tool. In fact, it appears to be a holding device specifically excepted from paragraph 352. Since it is an integral part of the machine, it is properly dutiable under paragraph 372, as modified, as a part, not specially provided for, of a punch, shear, or bar cutter, at the rate in effect on the date of entry, 17 per centum ad valorem. To that extent, protest 62/9569 is sustained. As to all other merchandise and in all other respects, the protests herein are overruled. Judgment will be rendered accordingly.