ATCHISON, T. & S. F. R. CO. v. UNION WIRE ROPE CORPORATION.

No. 8230.

District Court, W. D. Missouri, W. D.

Nov. 7, 1931.

Lathrop, Crane, Reynolds, Sawyer & Mersereau, of Kansas City, Mo., for plaintiff.

Phil D. Morelock (of Shouse, Doolittle, Morelock & Shrader), of Kansas City, Mo., for defendant.

OTIS, District Judge.

The plaintiff has brought this case in forty-three counts to recover from the defendant on account of alleged freight undercharges. Each count, with one exception, is like every other, except that each count concerns a different shipment.

Trial by jury was waived by written stipulation. The principal facts were also stipulated. There was some oral testimony.

The facts under the first count and the legal question arising in connection with that count are typical.

The defendant, as consignor, delivered to the plaintiff at Kansas City for shipment to Pampa, Tex., for delivery there to a named consignee, one carload of wire rope and prepaid freight charges thereon of $178.67. The plaintiff claims the amount legally due and payable was $235.80.

The wire rope was either fabricated or manufactured in Kansas City by the defendant from steel rods which within the year had been shipped via the Wabash from Chicago.

The defendant claims the true rate is determined by a certain Wabash tariff offered in evidence. The whole controversy here is as to the construction and application of that tariff.

The Wabash tariff in question provides that "articles of iron and steel (including rods) originating in (Chicago) may be stopped at Kansas City for the purpose of reworking or assembling (called fabrication herein) and may be reshipped in carloads to (certain territory which includes the destination points involved in this case)."

If what was done in Kansas City by the defendant to the steel rods received by it was a "reworking or assembling (called fabrication)" of these rods, and no more, then the plaintiff cannot prevail in this case.

What was done in Kansas City was this: The steel rods were subjected to a heating process and to certain chemical treatment to prepare them for drawing. They were then, in repeated operations, drawn through dies of lessening sizes into steel wire. The resulting wire was woven into strands. These strands were then woven about a central core of manila rope so as to form the finished product, which was wire rope.

Was this a mere "reworking," a mere "fabrication" of the steel rods?

I think it was not. I think it was a "manufacture" of an entirely new product, to wit, a manufacture of wire rope.

1. Consider the words "reworking" and "fabrication," in the sense in which they are usually understood. They are simple words in common use. Generally speaking, they are not synonymous. But we are not concerned with any distinction between them, for the reason that the important word here is the word "reworking." The tariff does not speak of rods which are stopped in transit for "reworking" or "fabrication," but for "reworking," which is "called fabrication herein."

To rework is to work over. To rework a steel rod is to continue further the processes which already have been used. If a boy of steel has been worked into a rod, and if by further processing that rod is reduced in

size, but still continues to be a steel rod, then it has been reworked, but, if it is subjected to such processes as that it ceases to be a rod, then it has not been reworked. In the latter case, the rod has been used as raw material for the manufacture of something else.

Counsel for the defendant has argued that, if a steel rod has been transformed by the processes of manufacture into watch springs, that is only a "reworking" of the steel rod. I think the argument is untenable. In the usual meaning of the word "reworking," that process ends when the character of the thing changes and through manufacture another and distinct thing evolves. When a steel rod is heated, subjected to chemical and physical changes, and drawn into fine wire, there has been, not a reworking of a steel rod, but a manufacture of a thing entirely new.

If a steel rod is merely "reworked" when it is drawn into fine wire, and that wire is woven about a manila core to form wire rope, then also it is merely "reworked" when it is wound about an armature to form a dynamo or so enmeshed as to constitute a woven wire fence or a screen door. To give to the word "reworked" such an amplitude of meaning seems to me unthinkable.

2. In this connection I think the word "fabrication" must be given a technical meaning. It cannot be given its usual meaning only. A steel rod cannot be again fabricated. It is already fabricated; that is, "made." That which is made cannot be made again, although it can be "reworked."

What, then, is the technical meaning of "fabrication" as used in this tariff?

Especial weight is to be given to the opinions of the Interstate Commerce Commission in interpreting tariffs. That Commission several times has pointed out the distinction between "fabrication," as used in tariffs and "manufacture." Thus in the case of Investigation and Suspension Docket No. 264, 29 I. C. C. 70, it was said: "A clear distinction exists between the process by which structural steel is manufactured and the subsequent process by which it is adapted for use in bridges, buildings, and other structures. In connection with the latter, custom has established the use of the word 'fabrication' to distinguish it from the previous one of manufacture. The manufacturing process of structural steel embraces the conversion of the ore into steel, the forming of the steel into billets, and the transforming of the billets, by passing them between grooved rolls, into various forms, known as structural steel plates, bars, angles, channels, beams, tees, zees, and so on. The operations of the shop which cuts these various structural steel shapes to the required length, punches, drills, planes the ends, and rivets the structural steel together are termed by the trade 'fabrication.'"

See, also, Parkersburg Rig & Reel Company v. Baltimore & Ohio Railroad Company, 63 I. C. C. 363, and Magor Car Corporation v. Delaware, L. & W. Railroad Co., 144 I. C. C. 135.

There can be no question that the Interstate Commerce Commission always has distinguished between "fabrication" in transit and "manufacture" in transit. The distinction is most reasonable. Indeed, the defendant here recognizes the validity of the distinction, and has been driven to the contention that wire rope is not a "manufactured," but is only a "fabricated" product. The contention ignores the generally understood meaning of the word "manufacture."

3. The very theory which underlies the allowance of transit privileges is entirely inconsistent with the idea that these privileges may be extended to articles undergoing in transit, not merely a "reworking," a "fabricating," but "manufacture" into something else. Speaking of one of these privileges, "creosoting in transit," the Supreme Court said in Central R. Co. of New Jersey v. United States et al., 257 U. S. 247, 257, 42 S. Ct. 80, 82, 66 L. Ed. 217: "Creosoting in transit, like other transit privileges, rests upon the fiction that the incoming and the outgoing transportation services, which are in fact distinct, constitute a continuous shipment of the identical article from point of origin to final destination."

A "manufacture" which changes the identity of an article is not a "fabrication" such as is consistent with the theory of transit privileges.

### Finding of Facts.

I find the facts to be as stipulated by the parties, and from the testimony, other than the stipulation, I make the following finding of additional facts:

(1) The wire rope produced by the defendant at Kansas City and by it delivered to the plaintiff for shipment was not the identical steel rods received by it. The defendant did not rework, assemble, or fabricate the rods received by it, but, out of them, manufactured a new product, to wit, wire and wire rope.

### Conclusion of Law.

I conclude as a matter of law that the transit privilege in the Wabash tariff relied on by the defendant does not apply to the facts of this case, and that the plaintiff is entitled to judgment as to each count.

### Indicated Judgment.

Plaintiff's counsel will prepare and submit for approval and entry an appropriate journal entry showing judgment for plaintiff.

### Exceptions.

The defendant is allowed an exception to the conclusion of law set out herein and to the refusal of the court to give requested declarations of law 1 and 2, filed herewith.