**T. D. DOWNING CO.**

v.

**UNITED STATES.**

**C.D. 3386; Protest No. 65/9638–18916.**

United States Customs Court,
Second Division.
April 2, 1968.

**802**

---

Walter E. Doherty, Jr., Boston, Mass., for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Arthur H. Steinberg and Alfred A. Taylor, Jr., New York City, trial attorneys), for defendant.

Before RAO and FORD, Judges.

FORD, Judge:

The subject importations, described as a turret punch press and parts, were classified as "Punches * * * intended for use in fabricating structural or other rolled iron or steel shapes" under paragraph 372 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, and were assessed with duty at the rate of 17 per centum ad valorem. Plaintiff claims the importations are properly dutiable as "machine tools," at the rate of 15 per centum ad valorem under paragraph 372, as modified by the General Agreement on Tariffs and Trade, T.D. 51802.

The pertinent statutory provisions are as follows:

*As classified:*

Paragraph 372 (modified by T.D. 54108):

Punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes . . . . 17% ad val.

*As claimed:*

Paragraph 372 (modified by T.D. 51802):

Machine tools (except jig-boring machine tools) . . . 15% ad val.

\* \* \* \* \* \*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part:

\* \* \* \* \* \*

Other . . . . . .The same rate of duty as the articles of which they are parts

Paragraph 372, Tariff Act of 1930, contains the following proviso:

*Provided further,* That machine tools as used in this paragraph shall be held to mean any machine operated other than by hand power which employs a tool for work on metal.

There is no dispute concerning the fact that the importations are a punch press and parts thereof and it is conceded that they are machine tools. The fact that the punch press is not intended for use in fabricating structural steel shapes also is conceded by defendant. Accordingly, the dispositive issue presented here is whether the punch press is of the type described, in tariff terminology, as being intended for use in fabricating rolled iron or steel shapes.

Prefatory to deciding that question, a proper understanding should be reached as to the meaning of the word "fabricating". For, as a verbalism, the use of the word in paragraph 372 creates a descriptive tariff distinction in punch presses between those which fabricate rolled iron or steel shapes and those which do not.

The verb "fabricate" as used to describe the function of a punch press is

subject to two possible interpretations. It may be construed as being synonymous with such words as "make," "form," "produce," "manufacture," and similar verbs which mean to cause an article to come into being. Or, it may have the same essential meaning as words such as "advance," "further," "improve," and similar words indicating a progression from an elementary or basic form of an existing article to a higher stage of development.

The choice made between these two possible interpretations is significant in this case. If "fabricate" is held to describe the function of causing an article to come into being, then a punch press, to be describable as the subject punch press was classified, must be one from which there emerges a rolled iron or steel shape, which shape did not exist prior to the operation performed by the punch press. If, on the other hand, "fabricate" is used to describe the process of causing an article to be advanced to a higher stage of development, then a punch press used to fabricate iron or steel shapes must be one into which such a preexisting shape is introduced to be further worked upon by the punch press. In other words, the latterly discussed description of a punch press used to fabricate rolled iron or steel shapes requires, as a prerequisite to so classifying the punch press, preexistent shapes.

We have reviewed those decisions involving the classification of punch presses in order to determine the meaning of the word "fabricate." While these earlier opinions offer some exegetic assistance, in this case they are not directly in point and for that reason are not controlling.

In Henry Pels & Co. v. United States, 27 CCPA 1, C.A.D. 51, affirming 73 Treas.Dec. 756, T.D. 49540, certain knives or blades, shown to be designed for use in shearing metal shapes (rounds, squares, angles, and tees) were found to be parts of shears intended for use in fabricating structural or other rolled iron or steel shapes within paragraph 372, Tariff Act of 1930. If the record

there disclosed what shapes were produced by the machine, the appellate court apparently did not consider such information of sufficient importance to be mentioned in its decision. However, the dispositive issue there was whether the word "fabricate" included a cutting or shearing operation. Accordingly, the holding is not controlling here.

This court, in National Lock Company v. United States, 45 Cust.Ct. 236, Abstract 64441, held that a punch press was classifiable under the provisions in paragraph 372, Tariff Act of 1930, for "Punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes" other than as machine tools under the same paragraph. In the operation of the machine, material, in the form of strips of steel, was automatically fed into the machine between blanking dies. The court found that the machine was used exclusively for punching steel shapes in the form of hinge wings. The decision indicates the court was more concerned with the shapes produced by the punch press than with the form of the material fed into the machine. The court, in its opinion, did not discuss, much less decide, the issue presented here.

The other cases cited by the parties have been reviewed as have other decisions pertaining to the classification of punch presses. See, e. g., Underwood-Elliott Fisher Co. v. United States, 64 Treas.Dec. 347, T.D. 46666; Henry Pels & Co. v. United States, 65 Treas.Dec. 1294, Abstract 26990; Wiedemann Machine Co. v. United States, 70 Treas.Dec. 550, T.D. 48605; Wiedemann Machine Co. v. United States, 63 Treas.Dec. 1478, Abstract 23870; Lionel Corporation et al. v. United States, 71 Treas.Dec. 736, T.D. 48952; Upton, Bradeen & James, Inc. v. United States, 56 Cust.Ct. 92, C.D. 2616. These decisions are not specifically applicable to the issue now being considered. For, in those cases where the issue was raised, its resolution was not necessary to the result reached by the court. Of course, in those cases in which the issue was not raised,

we cannot assume that the court gave consideration to its possible effect on the decision had it been presented.

The one decision found in which the word "fabrication" specifically was defined is Henry Pels & Co. v. United States, 73 Treas.Dec. 756, T.D. 49540, in which the court accepted the definition contained in Webster's New International Dictionary, second edition, which was:

Mach. The process of converting rolled plates and shapes into structural members.

Webster's Third New International Dictionary, 1966, contains the following definitions of "fabrication":

The process of converting one form of metal into another (as ingots into rolled shapes, rolled shapes into structural members, castings into weldments, wire into springs, forgings into gears).

In pursuit of information concerning the difference, if any, in tariff taxonomy, between the production and fabrication of metal shapes, we have considered the related question of whether there exists a tariff difference between fabricated shapes and unfabricated shapes.

Such a difference does exist in the tariff treatment of iron or steel shapes. Paragraph 312 of the Tariff Act of 1930 distinguished between structural shapes of iron or steel which are not assembled, manufactured, or advanced beyond hammering, rolling, or casting; and those which were machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting. This statutorily-recognized distinction demonstrates not only a difference between the manufacture and the fabrication of shapes, but also that fabrication is considered to be a method of advancing rolled shapes.

In Baron Tube Co. et al. v. United States, 39 Cust.Ct. 85, C.D. 1910, this difference was discussed and was relevant to the decision of the court. Paragraph 312 was interpreted as providing for both structural shapes which are not assembled, manufactured, or advanced beyond hammering, rolling, or casting and structural shapes which are machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting.

The court in the Baron Tube decision cited an earlier decision involving the similar statutory language of paragraph 312 of the Tariff Act of 1922. In United States v. Henry L. Exstein Co., Inc., 16 Ct.Cust.Appls. 328, T.D. 43079, the appellate court stated that the use of the phrase "fabricated for use" means that there are structural shapes which are not fabricated for use. In other words, the fact that a fabrication process is not necessary to the formation of structural shapes for tariff classification purposes, tacitly was recognized.

The Summary of Tariff Information on the Tariff Act of 1922, contains, at page 653, in reference to the 1922 Act, the instructive explanation that:

Structural shapes are steel or iron beams and other shapes rolled for structural or fabricating purposes, * * *.

Again, it appears from the quoted language that the fabrication process is used after rolled iron or steel shapes are in existence.

More directly in point is the information contained at page 73 of Summaries of Tariff Information, 1948, volume 3, part 2, in the comment to paragraph 312, Tariff Act of 1930:

* * * Structural shapes of iron or steel are produced by rolling. Ordinarily more than three-fourths of the output is fabricated, that is, machined, drilled, punched, etc., in mills before being shipped to construction enterprises.

The quoted paragraph contains the only definition found, in the tariff statutes or statutory research material, concerning the meaning of the term "fabricate." The fabrication processes—machining, drilling, punching, etc.,—are operations performed on iron or steel

shapes which previously were produced by rolling.

Further support for the hypothesis here discussed—that a tariff distinction exists between fabricated and unfabricated shapes—is found in a report of the United States Tariff Commission, Report No. 128, published in 1938, as a survey of the iron and steel industries, entitled "Iron and Steel," from which the following excerpts are taken:

> * * * Steel, for the most part, is hot-rolled either into forms ready for use, or into products to be further advanced by cold-rolling, drawing, welding or other processes. [p. 2.]

Imports of structural shapes—

> * * * include both plain and fabricated shapes * * *. [p. 24.]

In 1937, about one-third of the total exports of structural shapes consisted of—

> * * * fabricated shapes * *. [p. 24.]

> * * * * * *

> * * * The rate of duty of ⅕ cent per pound on unfabricated shapes was equivalent to about 15 percent ad valorem in 1936. [p. 25.]

> * * * * * *

> *Steel-mill operations.*—Steel ingots vary widely in size and shape and usually weigh several tons each. After being brought to the proper temperature, they are worked mechanically by rolling, forging, or pressing into many different kinds of semifinished and finished products, often with intermediate reheating. [p. 50.]

> * * * * * *

> After hot rolling, many of the products are further advanced by cold working to obtain superior finish and increased strength, and by coating with various materials to make them resistant to corrosion and to improve their appearance. Steel is subjected to many other types of advanced processing, including fabrication, heat treatment, case hardening, and nitriding (a process producing a very hard surface). [p. 50.]

* * * * * *

> *Products advanced beyond hot-rolling, and casting.*—Many of the principal manufactures into which the rolling mill products are converted are also produced by the steel companies. Such products include tin plate, pipes and tubes, galvanized and other advanced sheets and strips, fabricated structural shapes, wire, wire products, forgings, and rolled-steel car wheels. [pp. 133–134.]

A table, appearing at page 139, listing semifinished and finished iron or steel products exported from the United States includes:

> Boiler or other plate, plain and fabricated

> * * * * * *

> Structural shapes, plain and fabricated

The tariff commission report, in addition to showing that rolled shapes may be either unfabricated or further advanced by fabrication, contains an instructive description of the steel manufacturing process. This description, which follows, together with a chart referred to in the description, indicates that finished shapes (beams, channels, angles, zees, tees, etc.) are adapted for special uses by a fabrication process.

## PROCESS OF PRODUCTION AND ADVANCES IN TECHNOLOGY

Stages and Processes of Manufacture.

The first stage in iron and steel making is the extraction of iron from its ore in the blast furnace. The pig iron thus produced is used without refining for making iron castings, but for conversion into steel or wrought iron most of the impurities must be removed through refining operations. Steel is usually made by one of three major processes—open-hearth, Bessemer, and electric; or sometimes by a combination of two of these (duplex). The cementation, crucible, and direct processes for making iron or steel are now practically obsolete or are used only to a limited extent.

Molten steel made in open-hearth, Bessemer, electric, or crucible furnaces is poured into either ingots or castings. The ingots are hot worked by rolling, forging, or pressing into semifinished or finished products, and some are advanced further by the iron and steel industry. Wrought iron is rolled into various semifinished and finished products in much the same way as is steel.

The essential stages of modern steel manufacture from the raw material to the finished product are shown in chart 1, page 39. * * *

1 By-product of pickling operations.

CHART 1.—Diagram of Steel Manufacture.

Source.—"The Metallurgy of Iron & Steel" (McGraw-Hill Book Co., Inc.), Bradley Stoughton, 1934, p. 56; slightly revised by U.S. Tariff Commission.

Further illumination is contained in the Summaries of Tariff Information, 1948, volume 3, part 2, page 9. There, after explaining the usual methods of making steel, the comment to paragraph 304, Tariff Act of 1930, recites that:

Most ingots and semifinished steel products are used in the plants where they are made, chiefly because of the economies resulting from large-scale integrated operations. Also, some of the finished rolled, forged, or cast products are further advanced by the steel mills and foundries which produce them; for example, some large steel producers fabricate structural steel and engage in construction and ship-building activities. * * *

It is apparent from the quoted descriptions concerning the manufacture and further processing of iron and steel shapes that there is a difference between the manufacture of such shapes and their fabrication. This difference, we believe, accurately was described in a decision of a federal district court. The decision, Atchison, T. and S. F. R. Co. v. Union Wire Rope Corporation (D.C.Mo.), 1 F. Supp. 399, 400, although not involving an interpretation of the tariff laws, so clearly expresses the difference that we adopt the following language as pertinent to an understanding of the issue presented here under paragraph 372 of the Tariff Act of 1930:

* * * A clear distinction exists between the process by which structural steel is manufactured and the subsequent process by which it is adapted for use in bridges, buildings, and other structures. In connection with the latter, custom has established the use of the word 'fabrication' to distinguish it from the previous one of manufacture. The manufacturing process of structural steel embraces the conversion of the ore into steel, the forming of the steel into billets, and the transforming of the billets by passing them between grooved rolls, into various forms, known as structural steel plates, bars, angles, chan-nels, beams, tees, zees, and so on. The operations of the shop which cuts these various structural steel shapes to the required length, punches, drills, planes the ends, and rivets the structural steel together are termed by the trade 'fabrication'.

■ To summarize the conclusions which are amply supported by applicable statutory research material, we are of the opinion that there is a difference between the manufacture and the fabrication of rolled iron and steel shapes; that there is a tariff distinction between fabricated shapes and unfabricated shapes; that fabrication is considered to be a method of advancing rolled shapes which previously were manufactured. Specifically, we conclude that the word "fabricating," as used in paragraph 372, was intended to mean a method of advancing an elementary or basic rolled iron or steel shape to a higher stage of development.

Accordingly, in order to be classifiable as a punch intended for use for fabricating rolled iron or steel shapes, the subject punch press must be one which performs its function upon material which is already in the form of "shapes," within the tariff meaning of that term. Therefore, the fact that the form produced by the punch press may be such a shape, is of no consequence in determining whether the subject machine is intended for use in fabricating rolled iron or steel shapes.

The next issue presented for determination, therefore, is whether the material upon which the subject punch press performs its operation is properly described as a "shape" in the tariff sense. The record in this case clearly establishes that the material upon which the punch press performs its work is a sheet of rolled steel. The testimony submitted upon trial was that flat sheet metal is not a shape as that word is used in the steel industry. Further, defendant concedes that before the material introduced into the punch press was subjected to the punching operation,

it was a sheet of metal without a shape. We agree with that statement which, because of its implication, may be considered as a concession of fact.

While rulings of the Bureau of Customs are not binding on the court, it is interesting to note that the Commissioner of Customs in 1932, T.D. 45489(6), declared that sheets and plates are not shapes within the meaning of paragraph 372, of the Tariff Act of 1930. The opinion, which held that a power press designed for working flat sheets of metal was not a punch intended for use in fabricating shapes, was as follows:

> *Machine tools—Punches for fabricating rolled iron or steel shapes.*—A crank power press designed for working flat sheets of metal only held dutiable at 30 per cent ad valorem under paragraph 372 of the Tariff Act of 1930 as a machine tool, rather than under the provision in the same paragraph for punches intended for use in fabricating structural or other rolled iron or steel shapes, it being shown that the term "shapes" is applied in the metal trades of this country to iron or steel rolled to definite forms such as "I" beams, girders, columns, angles, channels, zees, tees, and other shapes, but not to sheets or "plates".

■ Upon the trial in this case, plaintiff's witness referred to a book published in 1964 by the United States Steel Corporation entitled, "The Making, Shaping and Treating of Steel," as a recognized authority in the steel industry. This court, of course, may refer to such reference material to assist it in determining the meaning of the term "shapes." United States v. Merck & Co., 8 Ct.Cust. Appls. 171, T.D. 37288.

Chapter 25, captioned "Structural and Other Shapes," of that book, contains the following discussion pertaining to the word "shape," which does not include sheets within that category:

> In rolling-mill parlance, the word "shape" is used interchangeably with the word "section" in describing forms of rolled material (except for geometrical shapes, which are known as rounds, squares, hexagons, etc.). Shapes, or sections, are normally divided into two classes, structural and other sections. Structural sections include standard items, such as I-beams, channels, angles, and wide flange beams, and special sections such as zees, tees, bulb angles, and car-building center sills. Other sections include such miscellaneous shapes as steel H-piles, sheet piling, tie plates, cross ties, and those for special purposes.

The tariff difference between rolled shapes and sheets is manifested in the Tariff Act of 1930. Paragraph 312 pertains to structural shapes of iron or steel, while paragraph 309 refers to iron or steel sheets, plates, etc.

■ Accordingly, upon the concession and our finding that the material upon which the punch press performs its operation is not a rolled shape, and as a result of our conclusion that the tariff description for punches intended for use in fabricating rolled iron or steel shapes is restricted to those punches which are intended for use in working upon metal in the form of shapes, we hold that the subject importations were improperly classified. Furthermore, there being no dispute concerning the fact that the subject punch presses are machine tools, we hold that they are classifiable, as claimed, as machine tools under paragraph 372 and, as such, properly dutiable at the rate of 15 per centum ad valorem, as claimed.

Accordingly, the protest is sustained and judgment will be entered accordingly.