59 CCPA

**WESTERN WIRE WORKS, INC.,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**
**Customs Appeal No. 5412.**

United States Court of Customs and Patent Appeals.
Nov. 4, 1971.

**1402**

Zanley F. Galton, Jr., Portland, Or., attorney of record, for appellant.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Peter Jay Baskin, New York City, for United States.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

LANE, Judge.

This is an appeal from the decision and judgment of the Customs Court, 64 Cust.Ct. 288, C.D. 3992 (1970), overruling appellant's protest against the classification of the imported merchandise. We affirm the judgment of the Customs Court.

The importation is a machine invoiced as a "Schuler-Perforating Press." Mr. Holmer, plant manager of the perforating department of appellant corporation, testified that the machine, which consists of a punch and a receiving cavity, is used to perforate a flat sheet of metal. He stated that in operation the punch is brought down through the starting sheet and into the die cavity leaving a hole and punched-out section of metal which conform in configuration to the shape of the punch. Appellant's primary product is a chip screen—a metal plate perforated with holes of different shape and size.

The machine was classified under item 674.35 of the Tariff Schedules of the United States (TSUS) as a metal-working machine tool, other, and assessed with duty at the rate of 15 per centum ad valorem. Appellant contends that the merchandise should be classified at the rate of 10 per centum ad valorem under item 674.42 TSUS. The pertinent statutory provisions are:

| | Machine tools: | |
|---|---|---|
| | Metal-working machine tools: | |
| 674.30 | Machine tools for cutting or hobbing gears .......... | * * * |
| 674.32 | Boring, drilling, and milling machines, including vertical turret lathes ........... | * * * |
| 674.35 | Other ................. | 15% ad val. |
| | Other machine tools: | |
| 674.40 | Reciprocating gang-saw machines ................ | * * * |
| 674.42 | Other ................. | 10% ad val. |

In upholding the classification of the collector, the Customs Court rejected appellant's contention that the manner in which the tool operates on the workpiece is determinative of whether it is a "metal-working machine tool" or "other machine tool." Appellant asserts that two classes of operations can be identified—shearing and cutting. Whereas shearing was stated by Mr. Holmer, the sole witness at trial, to be the mechanism by which the imported perforator operates the scope of "metal-working" as used in items 674.30, 674.32 and 674.35 TSUS is urged by appellant to be limited to cutting operations.

To arrive at its interpretation of "metal-working," appellant first relies upon the testimony of Mr. Holmer to the effect that the *Mechanical Engineer's Handbook* by Marks, a familiar authority in the field, distinguishes between shearing and cutting operations; the latter altering the profile of the workpiece, the former leaving the thickness unchanged. This, in and of itself, is not conclusive since there is no evidence that the term "metal-working" is used to denote only the cutting operation. In fact,

we note that Marks discusses *shearing* under the subsection entitled "Metal-Working Operations and Equipment"[1] while devoting a separate subsection to "Metal-Cutting."[2]

In further support of its interpretation, appellant contends that the exemplars in items 674.30 and 674.32 TSUS are all cutting tools rather than shearing tools. Initially we note that although appellant relies upon the testimony of Mr. Holmer, it is ambiguous on this point. The relevant dialogue is as follows:

Q. [I]s a machine for cutting or hobbing gears, boring, drilling, a milling machine, including a turret, vertical turret lathe, * * * in the same *classification?*

A. All the same, yes.

Q. Would you include in that *classification* a perforating machine?

A. No; I wouldn't. (Emphasis added.)[3]

It is not clear whether "classification" was intended and/or understood to mean classification in the tariff sense of the word or in the cutting-shearing sense. We note, however, that the appellee has not disputed the existence of a difference between shearing and cutting, the fact that the imported perforator operates by shearing rather than cutting, or the contention that the exemplars are all cutting tools. As we explain below, we are not persuaded of error even assuming the accuracy of appellant's characterization of the exemplars as cutting tools.

Appellant concludes that a shearing tool such as the imported perforator would not be *ejusdem generis* with these exemplars. Resort to a rule of construction such as *ejusdem generis* is inappropriate where the intent of the legislature is otherwise ascertainable. Air Express International Agency, Inc. v. United States, 53 CCPA 11, 14, C.A.D. 869 (1966); Sandoz Chemical Works, Inc. v. United States, 50 CCPA 31, 35, C.A.D. 815 (1963). Where, as here, there is evidence to support the conclusion that a term was intended to be of a scope broader than that which might be gleaned from specifically named exemplars, the term is given its full sweep. The Customs Court found evidence of such a broader scope with respect to "metal-working machine tools" in the Explanatory Notes of the Tariff Commission.

The predecessor Tariff Act of 1930, paragraph 372, as amended, provided for "punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes." The Tariff Commission's Notes indicate that items 674.30 and 674.35 TSUS incorporate these provisions.[4] This establishes that contrary to appellant's contention that only cutting tools were contemplated as "metal-working" tools, both shearing and cutting tools were regarded as within the ambit of that phrase.

In T. D. Downing Co. v. United States, 60 Cust.Ct. 345, 282 F.Supp. 801, C.D. 3386 (1968), the Customs Court held a certain punch press which was apparently quite similar to the Schuler perforator not to be properly classified under the provision of paragraph 372 quoted above. Appellant reasons that since the imported merchandise would not have been classified under para-

1. Marks, pages 1708–11 (Fifth Edition, 1951).

2. *Id.*, pages 1749 *et seq.*

3. Record at 16.

4. The Explanatory Notes read in pertinent part:
Items 674.30 and 674.35 would cover metal-working machine tools. The latter item would reduce from 17 percent to 15 percent ad valorem the rate pres-

ently provided in paragraph 372 for "punches, shears, and bar cutters, intended for use in fabricating structural or other rolled iron or steel shapes." This provision has proved to be generally troublesome and unworkable. It is believed that the rate change would not produce any change in the volume of imports.

Tariff Classification Study, volume 8, page 272 (1960).

graph 372 because of the *Downing* case, it follows that it is not properly classified under item 674.35 TSUS into which the predecessor provision was merged. However, in *Downing,* the gloss given the prior language "fabricating * * * shapes" was decisive whereas that language is not found in the present items. There is no contention that the *shape* or *structure* of the material to be perforated renders item 674.35 inapposite. Accordingly, *Downing* neither advances appellant's interpretation of "metal-working" nor detracts from the significance of the incorporation of both cutting and shearing tools in the Tariff Schedule provisions here at issue.

The Customs Court also found that the Brussels Nomenclature included shearing machines under "Machine-Tools for Changing the Shape or Form of the Metal Without Removing Any of It," [5] language which closely parallels that appearing in the definition of "machine tool" in the headnote to Schedule 6, Part 4, Subpart F.[6] This is relevant and further supports the Customs Court's holding that the manner of operation does not distinguish "metal-working machine tools" from "other machine tools."

■■ We find no error in the holding that the distinction resides in the material worked. The Customs Court referred to *The American Mechanical Dictionary* by Knight which distinguishes between metal- and wood-working machinery. To us, "metal-working machine tools" suggests machinery for working on metal and "other machine tools" means machinery for working on materials other than metal. We are satisfied that the interpretation adopted by the Customs Court is in harmony with the common meaning of the statutory language.

The judgment of the Customs Court is *affirmed.*

Affirmed.

59 CCPA

5. Explanatory Notes to the Brussels Nomenclature, volume 3, pages 1325–26 (1967). Item 84.45 of the Brussels Nomenclature is defined as "Machine-Tools for Working Metal or Metallic Carbides * * *" The Explanatory Notes state:

The machine-tools of this heading are machines used for shaping or surface-working metal or metal carbides by either:

(i) Cutting away or otherwise removing metal or metallic carbides (e. g. lathes, drilling, planing, slotting, milling or grinding machines).

(ii) Changing the shape or form of the metal without removing any of it (e. g. presses, hammers, wire-drawing machines).

*Id.* at 1324.

Under the latter of these alternatives, titled as set forth in the text accompanying this footnote, is included:

(9) Shearing, punching, blanking and notching machines, for carrying out various cutting operations on plates, sheet, strip, bars, etc.

*Id.* at 1326.

6. Headnote 1(a) reads in pertinent part:

[T]he term *"machine tool"* means any machine used for shaping or surface-working—

* * * * *

whether by cutting away or otherwise removing the material or by changing its shape or form without removing any of it * * *